**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GARY STEINBERG** | § | |
| | § | |
| **Plaintiff**, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-cv-02291-K |
| | § | |
| **BPO MANAGEMENT SERVICES, INC.** | § | |
| **F / K / A HEALTHAXIS, INC.,** | § | |
| **JOHN CARRADINE,** | § | |
| **RON HERBERT, and** | § | |
| **PATRICK DOLAN,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to the district court's standing order of reference dated December 2, 2009, came

on to be considered Defendants' motion to dismiss filed on January 15, 2010.  (Docs. 6-7).

Having considered the relevant pleadings, and for the reasons discussed below, the court finds

and recommends as follows:

*I.  Procedural History & Background:*

Plaintiff Gary Steinberg filed his *pro se* Complaint with jury demand on December 2,

2009, (Doc. 1), alleging claims under §§ 10(b), 13(a), 14(a), and 20(a) of the Securities

Exchange Act of 1934, 15 U.S.C. 78 *et seq*., as well as a claim for breach of fiduciary duty.  At

bottom, Plaintiff alleges that he is a shareholder of Healthaxis, Inc., and has suffered a financial

loss of at least $116,900 as a result of a merger between Healthaxis, Inc., a Pennsylvania

corporation that conducted significant business operations in Irving, Texas, and BPO

Management Services, Inc., a Delaware corporation with its principal place of business in

California.  BPO Management Services, Inc., John Carradine, Ron Herbert, and Patrick Dolan,

(hereinafter referred to as "Defendants"), filed their motion to dismiss on January 15, 2010,

(Doc. 6-7), pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  Defendants argue

that Steinberg's §§ 10(b) and 14(a) claims should be dismissed because he cannot establish

causation and has failed to plead that he is a purchaser or seller of securities; that his § 20(a)

claim should be dismissed because he cannot establish a primary violation under either § 10(b)

or § 14(a); and his breach of fiduciary duty claim should be dismissed for lack of standing.  In

the alternative, Defendants move for a more definite statement.  Plaintiff Steinberg filed his

response and objection on January 27, 2010.  (Doc. 8).  Defendants filed a reply on February 10,

2010.  (Doc. 11).

##### II.  *Factual Background:*

The facts described herein are based upon the allegations in Plaintiff's Complaint, which

the court accepts as true for the purposes of addressing the motion to dismiss.  *See Tellabs, Inc.,*

*et al. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 at 322, 127 S.Ct. 2499 (2007) (citations

omitted) ("[F]aced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with

any motion to dismiss for failure to plead a claim on which relief can be granted, accept all

factual allegations in the complaint as true.").  However, "conclusory allegations, unwarranted

factual inferences, or legal conclusions" are not accepted as true.  *See Cent. Laborers' Pension*

*Fund v. Integrated Elec. Servs., Inc*., 497 F.3d 546, 550 (quoting *Plotkin v. IP Axess, Inc*., 407

F.3d 690, 696 (5th Cir.2005)).

Plaintiff alleges that certain officers of Healthaxis, Inc. (hereinafter "Healthaxis") and

BPO Management Services, Inc. (hereinafter "BPOM") colluded in executing a scheme to merge

Healthaxis and BPOM in order to enrich only certain officers and shareholders, rather than accepting more favorable merger offers that would have resulted in lower returns to those individuals but substantially higher returns to other common shareholders of Healthaxis, including Plaintiff Steinberg.

Plaintiff's Complaint named five individuals as being involved in what is termed as the "fraudulent scheme".  Patrick Dolan was the Chief Executive Officer (CEO) of BPOM prior to the merger, and became the CEO and Chairman of the Board of Healthaxis following the merger. (Plaintiff's Complaint (hereinafter designated simply with the "¶" symbol followed by the relevant paragraph) at ¶¶ 11 and 172).  John Carradine was the CEO, President, and a member of the Board of Directors of Healthaxis prior to the merger, and became the Chief Operating Officer (COO) of Healthaxis following the merger.  (¶¶ 9 and 196).  Ron Herbert served as the Chief Financial Officer (CFO) of Healthaxis both before and after the merger.  (¶¶ 10 and 212). Sharad Tak, the principal of Tak Investments, was the second largest owner of Healthaxis common stock prior to the merger.  (¶ 257).  Sharad Tak entered into an Investor Rights Agreement with Healthaxis in 2004, granting him the authority to appoint a member to the Healthaxis Board of Directors and giving him the authority to prevent Healthaxis from selling the company or entering into any merger arrangement.  (¶¶ 257-261).  Tak appointed Barry Reisig to the Healthaxis Board of Directors.  (¶ 261).

On June 26, 2007, the Healthaxis Board of Directors held a meeting and decided to sell the company.  (¶ 43).  A press release was issued on December 19, 2007, notifying the public and shareholders of the company's intent to pursue a sale.  (¶ 45).  Healthaxis allegedly declined an offer to sell the company in December 2007 at a price of $9 million, which was subsequently

raised to $12 million before being declined a second time.  (¶ 78).  Dolan e-mailed

representatives of Healthaxis on February 7, 2008, and met with them on February 18, 2008,

expressing interest in purchasing Healthaxis.  (¶ 47).  In early March 2008, a competing offer to

purchase Healthaxis at approximately $1.50 per share was turned down, and on March 7, 2008,

Healthaxis and BPOM signed a letter of intent to negotiate a business combination.  (¶ 48-49).

Also in March 2008, Defendants created financial projections which stated the combined

Healthaxis-BPOM companies would realize $60 million in revenues in 2009 and $9 million in

earnings before interest, taxes, depreciation, and amortization (EBITDA).  (¶ 84).  Defendants

were allegedly aware that the only way to meet these projections would involve a significant

dilution of the equity of certain Healthaxis shareholders, as neither Healthaxis nor BPOM had

positive earnings at the time the projections were made.  (¶ 85).

In June 2008, Westlake Securities, LLC was retained by Healthaxis to render a "fairness

opinion" regarding the proposed merger with BPOM.  (¶¶ 123 and 124).  Westlake opined that it

would be fair for Healthaxis shareholders to receive 20% of the combined entity.  (¶ 128).  This

recommendation was allegedly based on fraudulent financial projections.  *Id*.  While merger

negotiations were pending, the Defendants compelled Sharad Tak and others to sign non-

disclosure agreements and obtained irrevocable voting agreements from Tak, Austin Lewis and

Lehman Brothers.  Although Defendants discussed their merger negotiations with these

signatories, they refused to discuss or to inform other stock holders.  (¶¶ 106-112).

On September 23, 2008, Ebix, Inc. made an unsolicited bid to purchase Healthaxis.  (¶

51).  Ebix had annual profits exceeding $27 million, a larger customer base than both Healthaxis

and BPOM combined, and a record of positive annual revenue and earnings growth.  (¶ 163).  By

contrast, as of March 2008, neither Healthaxis nor BPOM had positive earnings, BPOM had

quarterly revenues of approximately $5.9 million, and both entities had significant operating losses and low cash positions.  (¶¶ 83, 85, 93).  Although it was known in early 2008 that one of Healthaxis's largest customers intended to move, Healthaxis delayed reporting this potential loss of revenue until it filed a Form 8K on November 4, 2008.  (¶¶ 218-222).  On November 25, 2008, Defendants attended a hearing with the California Department of Corporations to seek an exemption from being required to register with the SEC.  (¶ 52).  Throughout his Complaint, Steinberg alleges that this was an effort to evade SEC scrutiny.

On December 29, 2008, Healthaxis held its annual meeting, and afterwards announced that the BPOM - Healthaxis merger had been approved by the shareholders, which was untrue because the shareholders were never allowed to vote.  (¶ 54).  Steinberg alleges Defendants acted improperly in locking up enough votes through voting agreements to secure the merger.  He also alleged that Tak's appointee to the Board of Directors, Reisig, ensured that Tak was made whole while other common shareholders lost as much as 95% of their investments, citing as an example the seven-year extension on a business contract, with a guaranteed minimum annual payment, that Tak allegedly received as a result of the merger.  (¶¶ 265, 269).

Following the merger, pre-merger shareholders of BPOM owned 75% of the capital stock of post-merger Healthaxis, and pre-merger shareholders of Healthaxis owned 25% of the capital stock of post-merger Healthaxis.  (¶ 67).  Steinberg alleges that based on the pre-merger values of both companies, this stock distribution was inherently unfair.  (¶¶ 91-93).  He alleges that the Healthaxis pre-merger shareholders should have received at least $1.39 per share as a result of the merger.  (¶ 105, 213).  As a result of the merger, Carradine, Herbert, Dolan, and Tak allegedly profited while the remaining common shareholders were completely disenfranchised.

(¶¶ 151, 256).  Instead, had a merger with Ebix taken place, the common shareholders would have realized a profit while BPOM would have gone bankrupt and Defendants Carradine, Herbert, and Dolan would have lost their jobs.  *Id*.

### III.  Legal Standard:

In reviewing a Rule 12(b)(6) motion, which tests the legal sufficiency of claims stated in the Complaint, the court must look solely at the pleadings themselves.  *See Jackson v. Procunier*, 789 F.2d 307, 309-10 (5th Cir.1986).  All facts in the Complaint are viewed in the light most favorable to the plaintiff, and all doubts are resolved in his favor.  *See Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997).  The court liberally construes the Complaint in favor of the plaintiff, and all pleaded facts are assumed to be true.  *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir.2002).  Specific facts, and not mere conclusory allegations, must be pled in order for the plaintiff to survive a 12(b)(6) motion.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937  (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

### IV.  Analysis:

Steinberg asserts five claims for relief: first, fraud in connection with the purchase or sale of securities, in violation of § 10(b) and Rule 10b-5; (¶¶ 271-285); second, violation of proxy solicitation requirements, in violation of § 14(a); (¶¶ 286-298); third, violation of § 20(a) against all individual Defendants; (¶¶ 299-303); fourth, violations of certification requirements, in violation of Rule 13a-14, against Defendants Carradine and Herbert; (¶¶ 304-308); and fifth,

breach of fiduciary duty against Defendants Healthaxis and Carradine.  (¶¶ 309-324).

### A.  Section 10(b) Claims

Section 10(b) prohibits "any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors" in connection with the purchase or sale of any security.[1]  15 U.S.C. § 78j(b).  Rule 10b-5 makes it unlawful to (1) "employ any device, scheme, or artifice to defraud", (2) "make any untrue statement of a material fact" or to omit a material fact necessary to avoid making the statement misleading, or (3) "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."  17 C.F.R. § 240, Rule 10b-5.

"Plaintiffs claiming a violation of 10(b) must plead, in connection with the purchase or sale of any security: '(1) a misrepresentation or omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately caused [the plaintiff's] injury.'" *Bachow v. Swank Energy Income Advisers, LP*, No. Civ. A. 3:09-CV-0262-K, 2010 WL 70520 at *3 (N.D.Tex., Jan. 6, 2010) (Kinkeade, J.), citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42, 125 S.Ct. 1627 (2005); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 406-07 (5th Cir. 2001).  In general a Complaint must satisfy Rule 8's requirement of "a short and plain statement

---

[1] Section 10 -- Manipulative and Deceptive Devices, b. To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  However,

securities fraud claims brought under § 10(b) and Rule 10b-5 must satisfy the heightened

pleadings requirements of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act

(PSLRA).  *See Tellabs*, *supra* 551 U.S. at 321-322.

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity

the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions

of a person's mind may be alleged generally."  "But the PSLRA enhanced the particularity

requirements for pleading fraud under Federal Rule of Civil Procedure 9(b) in two ways.  First,

plaintiffs must 'specify each statement alleged to have been misleading, [and] the reason or

reasons why the statement is misleading...' 15 U.S.C. § 78u-4(b)(1)(B).  Second, for each 'act or

omission alleged' to be false or misleading, plaintiffs must 'state with particularity facts giving

rise to a strong inference that the defendant acted with the required state of mind.'  15 U.S.C. §

78u-4(b)(2)."  *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527,

533.  (5th Cir. 2008).  The Fifth Circuit has summarized the requirements of Rule 9(b) and the

PSLRA as the "who, what, when, where, and how", providing a template for Plaintiffs to use in

pleading a § 10(b) securities fraud claim.  *See Goldstein v. MCI Worldcom*, 340 F.3d 238, 245

(5th Cir. 2003).  In addition to the grounds for dismissal raised in Defendants' motion, the court

may also dismiss claims on grounds not raised by the defendants themselves, so long as the

procedure employed is fair.  *See  Coates et al., v. Heartland Wireless Commc'ns, Inc. et al.*, 55

F.Supp.2d 628, 632 (N.D.Tex.1999) (Fitzwater, J.).

As stated above, a claim of a § 10(b) violation must be pleaded in connection with the

purchase or sale of a security.  *See Bachow, supra*, 2010 WL 70520 at *2.  In his Complaint,

Plaintiff stated that he is a shareholder of Healthaxis.  (Pl. Compl. ¶ 7).  In his response to Defendants' motion to dismiss, he states that he is a BPOM shareholder and that he purchased stock after the issuance of a proxy statement by Defendants.  (Doc. #8, p. 12).  Defendants submit "[i]t is well established that mere retention of securities in reliance on material misrepresentations or omissions does not form the basis for a § 10(b) or Rule 10b-5 claim." *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1443, at n.7 (5th Cir. 1993) (citations omitted).

Plaintiff's Complaint does not articulate that he purchased or sold securities in connection with the alleged misstatements or omissions.  It is unclear which, if any, of the alleged misstatements and omissions are connected with Plaintiff's purchase or sale of securities.  Defendant's motion to dismiss Plaintiff's § 10(b) claims should therefore be granted unless Plaintiff fails amends his Complaint to clearly state the connection between his purchase or sale of securities and the alleged misstatements and omissions.  In addition to the lack of clarity of the connection, if any, between alleged misstatements or omissions and Steinberg's purchase or sale of securities, Defendants argue that his pleaded Rule 10b-5 claim is deficient in other respects as well, which are addressed *seriatim*.

**(1) Material misrepresentation, incomplete disclosure, and / or omission**

<u>(a) Materiality</u>

To satisfy the Rule 10b-5 materiality requirement, a plaintiff must show that statements were misleading as to a material fact; it is not enough that a statement is false or incomplete if the fact that was misrepresented is otherwise insignificant.  *See Basic Inc., et al., v. Levinson*, 485 U.S. 224 at 238, 108 S.Ct. 978 (1988).  Whether a fact is material is dependent on whether there is a "substantial likelihood" that "disclosure of the omitted fact would have been viewed by

the reasonable investor as having significantly altered the 'total mix' of information made available." *Id*. at 231, citing *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 at 449, 96 S.Ct. 2126 (1976). "Put another way, '[a] statement or omitted fact is 'material' if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest'." *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2003); *see also Southland Sec. Corp v. Inspire Insurance Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004).

Statements that are "vague and optimistic" puffery, or generalized, positive statements about a company, its management, competitive strengths, or future prospects, are immaterial, since the market relies on specific facts in determining securities prices, and not "vague and optimistic statements". *Magruder v. Halliburton Co., and Lesar*, Civ. No. 3:05-CV-1156-M, 2009 WL 854656 at *5 (N.D.Tex. Mar. 31, 2009) (Lynn, J.). Similarly, statements of belief of a company's future prospects are only objectionable when the evidence shows that the speaker did not hold the belief and asserted something false or misleading. *Greenberg et al., v. Crossroads Systems, Inc. et al.*, 364 F.3d 657, 670 (5th Cir. 2004). Such predictive statements may be actionable where "(1) the speaker does not genuinely believe the statement is accurate; or (2) there is no reasonable basis for that belief; or (3) the speaker is aware of undisclosed facts that would tend to seriously undermine the accuracy of the statement". *Magruder* at *5, citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 868 (5th Cir. 2003); *Rubinstein v. Collins*, 20 F.3d 160, 166 (5th Cir. 1994). However, a mere allegation that certain predictive statements had no reasonable basis "would hardly suffice to state a claim under Rule 10b-5." *Magruder* at *5, citing *Rosenzweig* at 870. If the allegations rely on contingent or speculative information or

10

events, materiality "will depend at any given time upon a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity." *Basic Inc., supra*, 485 U.S. at 238. The materiality of misrepresented or omitted facts is judged in light of all surrounding circumstances. *Rosenzweig, supra*, 332 F.3d at 866; *see also Krim, supra*, 989 F.2d at 1448.

(b) Misrepresentations

The court looks to each allegedly fraudulent statement and / or omission independently in order to determine whether all the elements are alleged with the particularity required by the PSLRA in its evaluation of a motion to dismiss a securities case for failure to state a claim. *See Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 260 (5th Cir. 2005). In so doing, the court "cannot aggregate insufficient allegations/pleadings in order to arrive at a conclusion of sufficiency when [the Complaint is] viewed as a whole." *In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F.Supp.2d 832, 845 n. 5 (N.D.Tex.2005).

In order to avoid dismissal pursuant to Rule 9(b) and 15 U.S.C. §§ 78u-4(b)(1) and 78u-4(b)(3)(A), a plaintiff pleading a false or misleading statement or omission as his basis for a § 10(b) securities fraud claim must: (1) specify each statement alleged to have been misleading and/or fraudulent; (2) identify the speaker; (3) state where and when the statement was made; (4) plead with particularity the contents of the false representations and (5) what the person making the misrepresentation obtained thereby; and (6) explain the reasons why the statement is misleading and/or fraudulent. *Goldstein, supra*, 340 F.3d at 245. For allegations made on information and belief, a plaintiff must set forth, with particularity, a factual basis for the belief-and while he need not plead "every single fact" upon which his belief is based, he must plead

sufficient facts to support his beliefs.  *ABC Arbitrage, supra*, 291 F.3d at 350, n.67 and 353, n.82.

Statements by a third party may be used to satisfy this pleading requirement if the plaintiff can demonstrate that the defendants adopted the third party's statements or used the third party as a conduit to communicate the statements to the market.  *See Southland, supra* 365 F.3d at 373-74.  For a plaintiff to rely on third-party statements in a securities fraud action, his pleadings must (1) identify the specific forecasts and the name of the insider who adopted them; (2) identify specific interactions between the insider and analyst that allegedly led to the third party's entanglement; and (3) state the dates on which the allegedly entangling acts occurred.  *Id.* at 373-374.

(c) Omissions

When a fraudulent omission is alleged, the plaintiff must plead the type of facts omitted, the place where the omitted information should have appeared, and the way in which the omitted facts made the representations misleading.  Fed. R. Civ. P. 9(b); *In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F.Supp.2d 880, 892 (N.D.Tex. 2005) (Godbey, J.).  Moreover, the omitted statement must be specified in the same manner as a misrepresentation, in that the plaintiff must identify the "who, what, when, and where".  *Id.*  "The Complaint should specify the inference or implication that allegedly arises from the statement and explain why that inference or implication arises from the statement. Finally, the Complaint should specify the omitted information that is contrary to the implication or inference arising from the allegedly misleading statements, and establish that the omitted information was known to the speaker."  *Id.* at 894.

The additional pleadings requirements regarding omissions are necessary because a

corporation is not liable under § 10(b) merely because it failed to disclose all material information it possessed, rather it is only liable under Rule 10b-5 if the plaintiff alleges facts that give rise to an affirmative duty to disclose the material information.  *See Ind. Elec. Workers' Pension Trust Fund IBEW, supra*, 537 F.3d at 541 (citations omitted).  An affirmative duty arises when "(1) a corporate insider trades on confidential information; (2) a corporation has made inaccurate, incomplete or misleading prior disclosures; or (3) a statute or regulation requires disclosure."  *Magruder*, 2009 WL 854656 at *4, citing *Kunzweiler v. ZeroNet, Inc.*, No. Civ. A. 3:00-CV-2553-P, 2002 WL 1461732 at *10 (N.D.Tex. Jul. 3, 2002) (Solis, J.).  "[T]o survive a motion to dismiss where the plaintiff alleges fraudulent omissions or incomplete disclosures, the plaintiff must plead with particularity the facts that give rise to a duty to disclose the material information, or the failure to do so will not be actionable."  *Magruder* at *4.

(d) The PSLRA Safe Harbor

The PSLRA contains a safe harbor for forward-looking statements regarding projections of revenues, income, earnings, or other financial items; plans and objectives for future operations; and statements of future economic performance.  15 U.S.C. § 78u-5(i)(1).  The Fifth Circuit described the safe harbor test in *Southland Sec. Corp.*, *supra*, 365 F.3d at 371-72, to wit:

"The safe harbor has two independent prongs: one focusing on the defendant's cautionary statements and the other on the defendant's state of mind. Under the first prong, there is no liability if, and to the extent that, the forward-looking statement is: (i) "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking

statement," or (ii) "immaterial." Under the second prong, there is no liability if

the plaintiff fails to prove that the statement (i) if made by a natural person, was

made with actual knowledge that the statement was false or misleading, or (ii) if

made by a business entity, was made by or with the approval of an executive

officer of that entity with actual knowledge by that officer that the statement was

false or misleading."

"In short, if a statement is forward-looking, Defendants may invoke the first prong of the

safe harbor by showing (1) the statement was identified as forward-looking and accompanied by

meaningful cautionary language, or (2) that the statement was immaterial, or mere "puffery."

Then, to avoid the second prong of the safe harbor, Plaintiffs must plead facts showing the

statement was made with actual knowledge of its falsity.  Otherwise, the allegations should be

dismissed."  *Magruder, supra,* 2009 WL 854656 at *13.

In his 28 page, 324 paragraph Complaint, Steinberg sets forth allegations of a fraudulent

scheme involving numerous misrepresentations and omissions by Defendants.  Plaintiff's

Complaint does not adequately specify the statements and omissions he alleges to be misleading.

*See* 15 U.S.C. § 78u-4(b); *Ind. Elec. Workers' Pension Trust Fund IBEW, supra*, 537 F.3d at

533.  Rule 9(b) and the PSLRA essentially require that Plaintiff set forth the "who, what, when,

where, and how" for each misleading statement.  *See Goldstein, supra*, 340 F.3d at 245.

The Complaint provides a timeline of events (¶¶ 43-54) followed by allegations under

various subject headings that do not clearly specify the date, location, speaker, and method in

which the alleged misstatements or omissions occurred (i.e., press release, shareholder notice,

public or regulatory hearing).  Misstatements and omissions are alleged to have been present in

an array of media- through press releases, proxy statements, and hearings before the California

Department of Corporations.  Plaintiff has implicated at least five individuals in the "scheme".  It

is unclear from the Complaint which individuals and / or entities (i.e., BPOM and / or

Healthaxis) are alleged to have made the particular misstatements and omissions at issue.  In its

current format, the Complaint does not provide the Defendants, nor the court, the information

needed to discern the "who, what, when, where, and how" information for each alleged

misstatement or omission.

These shortcomings are not limited to particular sections, but are present throughout the

allegations in the Complaint.  Moreover, it is impossible to tell which, if any, of the

misstatements or omissions occurred in connection with the purchase or sale of securities.

Plaintiff has not provided any dates of his purchases or sales, and as previously stated, the

specific dates on which the material misstatements and omissions occurred are not alleged.

### (2) Scienter

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud."  *Tellabs,*

*supra*, 551 U.S. at 318.  To establish that a defendant acted with scienter, a plaintiff must allege

with particularity that the defendant had the intent to deceive, manipulate, defraud, or that the

defendant acted with severe recklessness.  See 15 U.S.C. § 78u-4(b)(2); *Magruder, supra*, 2009

WL 854656 at *6.  When analyzing scienter in the context of a Rule 12(b)(6) motion to dismiss,

the court accepts all factual allegations in the Complaint as true; considers the Complaint in its

entirety to determine whether all of the facts alleged, when taken collectively, give rise to a

strong inference of scienter; and considers plausible opposing inferences in determining whether

the pleaded facts give rise to a "strong" inference of scienter.  *See Magruder* at *6, *citing*

*Tellabs*, 551 U.S. at 321.

A Complaint will survive dismissal only if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, supra*, 551 U.S. at 323.  Regarding complaints with multiple defendants, the Fifth Circuit has rejected the "group pleading" doctrine, and therefore does not construe "allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the allegedly fraudulent statement is specifically pleaded." *Southland Sec. Corp*., *supra*, 365 F.3d at 365.

Scienter must exist at the time the misrepresentation or omission occurred.  *Magruder, supra,* 2009 WL 854656 at *6, citing *Kunzweiler, supra,* 2002 WL 1461732 at *6.  Allegations of motive and opportunity alone will not establish a strong inference of scienter, but may enhance the strength of an inference of scienter.  *Ind. Elec. Workers' Pension Trust Fund IBEW*, *supra*, 537 F.3d at 533, citing *Rosenzweig*, *supra*, 332 F.3d at 867.  Allegations of generalized financial motives will not support an inference of scienter, unless there is also a showing that defendants profited from such things as the inflated stock values or offerings.  *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 434 (5th Cir. 2002).  "Suspicious sales of stock may support an inference of scienter, but only insider trading in suspicious amounts or at suspicious times during the class period is probative of scienter. Plaintiffs must allege that stock sales were out of line with prior trading practices, or were made at times calculated to maximize personal profit." *Magruder* at *8.  Bare conclusions that defendants "must have known" about fraudulent activity based on the magnitude or duration of the fraudulent activity will not suffice to establish

scienter.  *Goldstein*, *supra*, 340 F.3d at 251.

While misstatements and omissions must be pled with particularity, with regards to scienter, in the context of a Rule 12(b)(6) motion to dismiss, the court considers the Complaint in its entirety to determine whether all of the facts alleged, when taken collectively, give rise to a strong inference of scienter.  *See Magruder, supra,* 2009 WL 854656 at *6, *citing Tellabs, supra*, 551 U.S. at 321. The "group pleading" doctrine has been rejected in the Fifth Circuit- therefore, allegations against the "Defendants" as a group are not properly imputable to a particular individual defendant unless the Plaintiff specifically pleads the connection between the individual and the allegedly fraudulent statement.  *Southland Sec. Corp., supra*, 365 F.3d at 365. ("the PSLRA requires the plaintiffs to 'distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud.'").

The Complaint alleges that "[i]t is appropriate to treat all of the individual corporate officers and board members as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, sworn statements and press releases as alleged herein are the collective actions of this narrowly defined group of defendants." (Compl. ¶ 12).  This statement would appear to be a "group pleading"; however, Plaintiff goes on to state facts in support of his allegation that individual defendants Dolan (Compl. ¶¶ 172-195), Carradine (Compl. ¶¶ 196-211), and Herbert (Compl. ¶¶ 212-217) acted with the intent to "deceive, manipulate, or defraud."  Therefore, viewing the Complaint as a whole, and the facts in the light most favorable to Steinberg, his Complaint sufficiently alleges that each of the Defendants acted with the requisite element of scienter.

### (3) Reliance & (4) Loss Causation

A plaintiff must plead that he actually relied on the statements made by the defendants. *See Dura Pharm., Inc., supra* 544 U.S. at 342. The "fraud on the market" presumption may be used to satisfy this requirement. *Luskin et al., v. Intervoice-Brite Inc., et al.*, 261 Fed.Appx. 697, 700 (5th Cir. Jan.8, 2008) (citing *Basic, supra*, 485 U.S. at 245-46). In order to invoke this presumption, a plaintiff must show that (1) the defendant made material misrepresentations, (2) the defendant's shares were traded in an efficient market, and (3) the plaintiff traded shares between the times the misrepresentations were made and the time the truth was revealed . *Id*. In utilizing the presumption, the plaintiff must also plead loss causation- he must demonstrate that the decline in price was due to the revelation of the truth, and not due to the release of unrelated negative information. *Id*. (citations omitted). If the plaintiff does not rely on the "fraud on the market" presumption, he must adequately allege proximate causation and economic loss in the Complaint. *In re Dell Inc., Sec. Litig.*, 591 F.Supp.2d 877, 905 (W.D.Tex., 2008), citing *Dura Pharm., Inc., supra*, 544 U.S. at 346.

In his Complaint, Steinberg does not clearly plead that he relied on the allegedly fraudulent statements made by Defendants. "Essentially, plaintiffs are required to allege a causal relationship between the statement or omission and actual movement of the stock price." *Magruder, supra,* 2009 WL 854656 at *10, citing *Greenberg, supra*, 364 F.3d at 663. The "loss causation pleadings" requirements adhere to the less stringent Rule 8, as opposed to Rule 9(b), and require only "a short and plain statement that provides the defendant with fair notice of what the plaintiffs' claim is and the grounds upon which it rests." *Magruder* at *10, citing *In re Dell Inc., Sec. Litig.*, 591 F.Supp.2d at 905; *Dura Pharm., Inc.*, 544 U.S. at 346. While Plaintiff alleges injuries of "at least $116,900" (e.g., Compl. ¶ 298), he does not claim to having traded

shares in between the date of the alleged misstatement and the date the truth was revealed, nor does he provide fair notice as to how he arrived at his $116,900 number.  Further, the Complaint does not specify which of the many alleged misstatements and / or omissions on which he relied in connection with the purchase or sale of securities.  In summary, Plaintiff has failed to adequately plead three out of five of the required elements for a § 10(b) claim.  While he sufficiently pleaded material facts and scienter, he has not adequately pleaded misrepresentation and / or omission, reliance, or loss causation.

## B.  Section 14(a) Claims

Section 14(a) prohibits the solicitation of proxies "in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest and for the protection of investors."[2]  15 U.S.C. § 78n(a).  Rule 14a-9 makes it unlawful to issue a proxy statement "which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.  To plead a proxy fraud claim, a plaintiff must show that "(1) defendants misrepresented or omitted a material fact in a proxy statement ...; (2) defendants acted at least negligently in distributing the proxy statement ...; and (3) the false or misleading proxy statement

---

[2]  Section 14 -- Proxies, a.  Solicitation of proxies in violation of rules and regulations

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12.

19

was an essential link in causing the [loss-generating] corporate actions." *Hulliung v. Bolen*, 548 F.Supp.2d 336, 339 (N.D.Tex. 2008) (Godbey, J.), citing *In re Browning-Ferris Indus., Inc., S'holder Derivative Litig.*, 830 F.Supp. 361, 365 (S.D.Tex.1993).

Plaintiff's Complaint alleged that Defendants misrepresented or omitted material facts in proxy statements filed with the Securities and Exchange Commission on October 23, 2008 and November 28, 2008.  (¶¶ 289, 294-295).  He alleged that Defendants were at least negligent in distributing the proxy statement based on their knowledge that the statement was based on improperly inflated valuations.  (¶¶ 290-292).  To establish an essential link, Steinberg must establish that his alleged injury resulted from a transaction which the proxy solicitation directly authorized.  *Hulliung, supra*, 548 F.Supp.2d at 340.  While Plaintiff has generally alleged that the issuance of new shares authorized in the November 28, 2008 proxy statement was an essential link in causing a loss to the value of Healthaxis's stock, his Complaint does not clearly connect the issuance of new shares, or any other transaction authorized by the proxy statement, to his alleged loss of at least $116,900.  (Pl. Compl. ¶¶ 53, 286, 298).  Therefore Steinberg's Complaint fails to plead facts sufficient to state a claim under Section 14(a).

### C.  Section 20(a) Claims [3]

"Under Section 20(a), a person who exerts control over a person who violates any

---

[3]  15 U.S.C. § 77t(a):  Section 20 -- Liabilities of Controlling Persons and Persons Who Aid and Abet Violations, a. Joint and several liability; good faith defense

Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

provision of the Securities Exchange Act can be held jointly and severally liable with the primary actor of the underlying securities law violation.  15 U.S.C. § 78t(a).  Liability under § 20(a) requires the primary actor to be liable for the underlying violation."  *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 206 n.4 (5th Cir. 2009).  Since, for the reasons stated above, the Complaint fails to sufficiently plead claims under §§ 10(a) and / or 14(a), his claims under § 20(a) are deficient as well.

### D.  Rule 13a-14 Claims & E.  Breach of Duty Claims

Plaintiff's Rule 13a-14 claims, brought under § 13(a) of the Securities Exchange Act of 1934, should be dismissed with prejudice.  § 13(a) does not afford a private right of action.  *See Earle v. Aramark Corp.*, No. Civ. A. 3:03-CV-2960-K, 2005 WL 473675, at *3 (N.D.Tex. Feb. 28, 2005) (Kinkeade, J.).  Because all of the federal claims alleged in the Complaint are subject to dismissal as urged in Defendants' motion to dismiss, Steinberg's common law breach of duty claims should be dismissed as well.  *See, e.g., Holland v. GEXA Corp.*, 161 Fed.Appx. 364, 366 (5th Cir. 2005), and 28 U.S.C. § 1367(c)(3).  The general rule is to dismiss state law claims when the federal claims in an action have been dismissed.

**RECOMMENDATION:**

For the foregoing reasons it is recommended that Defendants' motion to dismiss be GRANTED, unless, on or before a date set by the Court, Plaintiff files an amended Complaint consistent with Fed. R. Civ. P. 11(b), which complies with the pleadings requirements and

corrects the deficiencies noted in the foregoing recommendation.

Signed this 12th day of March, 2010.

_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

## NOTICE

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.